ROBERT W. THOMPSON, Esq. (SBN 106411)
SARAH C. VARISCO, Esq. (SBN 320200)
**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel: (949) 261-2872
Fax: (949) 261-6060
Email: rthompson@ctsclaw.com
svarisco@ctsclaw.com

Attorneys for Defendants, **PREMIER AUTOMOTIVE OF BUENA PARK, L.L.C**., a California Corporation dba PREMIER CHEVROLET OF BUENA PARK (erroneously sued as PREMIER CHEVROLET OF BUENA PARK, L.L.C., a California Corporation); **PREMIER AUTOMOTIVE MANAGEMENT, L.L.C.**, a Louisiana Corporation (erroneously sued as PREMIER AUTOMOTIVE MANAGEMENT, L.L.C., a Louisiana Corporation, dba Premier Automotive; PREMIER NISSAN OF SAN JOSE, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE CJDR OF BUENA PARK, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF CA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF NEWARK, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF SEASIDE, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, a California Limited Liability Company and PREMIER AUTOMOTIVE OF WEST COVINA, LLC, a California Limited Liability Company)

ANTHONY J. NUNES, Esq. (SBN 290224)
**NUNES WORKER RIGHTS LAW, APC**
15260 Ventura Blvd., Ste. 1200
Sherman Oaks, CA 91403
Tel: (530) 848-1515
Fax: (424) 252-4301
Email: tony@nunesworkerrightslaw.com

Attorneys for Plaintiff**, RONALD SILVA, on behalf of himself and all others similarly situated**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD SILVA, on behalf of himself and all others similarly situated,<br><br>Plaintiff, | Case No.: 2:20-cv-03671 DDP (MAAx)<br><br>JUDGE: Hon. Dean D. Pregerson<br>COURTROOM: 9C<br>COMPLAINT DATE: April 23, 2020 |

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

vs.

PREMIER CHEVROLET OF BUENA PARK, LLC, a California corporation, PREMIER AUTOMOTIVE MANAGEMENT, LLC, a Louisiana Corporation, dba Premier Automotive, PREMIER NISSAN OF SAN JOSE, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, a California Limited Liability Company, PREMIER AUTOMTOIVE CJDR OF BUENA PARK, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF CA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF NEWARK, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF SEASIDE, LLC, a California Limited Liability Company, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, a California Limited Liability Company and PREMIER AUTOMOTIVE OF WEST COVINA, LLC, a California Limited Liability Company and DOES 1-10,

Defendants.

**JOINT STIPULATION REQUESTING APPROVAL OF REPRESENTATIVE PAGA SETTLEMENT; [PROPOSED] ORDER THEREON**

[Filed Concurrently with [Proposed] Final Judgment and Declaration of Anthony J. Nunes]

DISCOVERY CUT OFF: NONE
MOTION CUT OFF: NONE
MSC DATE: NONE
TRIAL DATE: NONE

WHEREAS, on April 22, 2020, Plaintiff, RONALD SILVA ("Plaintiff"), filed a Class Action Complaint against Defendants PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMTOVE in the United States District Court for the Central District of California, Case No. 2:20-cv-03671 DDP (MAAx) ("the Action" or "Lawsuit").

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

WHEREAS, on March 2, 2021, Plaintiff filed a First Amended Complaint against Defendants PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMTOVE, PREMIER NISSAN OF SAN JOSE, LLC, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMTOIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC (collectively herein "Defendants").

WHEREAS, the Action is a representative action under the Private Attorney General Act ("PAGA"), through which Plaintiff seeks to represent current and former California employees of Defendants.

WHEREAS, the Parties recognize that in accordance with Labor Code Section 2699(*l*) Court approval is required in the event of a settlement of a PAGA action on a representative basis.

WHEREAS, as explained in *Arias v. Superior Court*, 46 Cal.4th 969 (2009), the Parties are not obligated to follow the class action procedural rules in PAGA cases and therefore need not obtain approval of the PAGA settlement thorough a motion for preliminary or final approval. *See also Mendoza vs. Nordstrom, Inc.*, 2 Cal. 5th 1074 (2017) ("PAGA authorizes a representative action without the need for class certification."); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014) ("a PAGA suit is fundamentally different than a class action" in that PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action."); *Williams vs. Sup. Ct.*, 3 Cal.5th 531, 546-547 (2017) ("PAGA does not make other potentially aggrieved employees parties or clients of plaintiff's counsel, does not impose on a plaintiff or counsel any express fiduciary obligations, and does not subject a plaintiff or counsel to scrutiny with respect to the ability to represent a large class.")

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

WHEREAS, the Parties seek to obtain the Court's approval of the settlement terms and resolve this matter in the most efficient manner possible.

WHEREAS, Plaintiff asserts the following cause of action in his First Amended Complaint: (1) Claim for Civil Penalties for Violations of the California Labor Code, pursuant to PAGA sections 2698, *et. seq*.

WHEREAS, Plaintiff alleges, among other things, that Defendants failed to pay himself and other aggrieved employees minimum wage, overtime and all wages owed at termination. Plaintiff also alleges Defendants failed to provide meal periods and paid rest breaks to himself and others aggrieved employees. Additionally, Plaintiff alleges Defendants failed to provide him and other similarly situated with accurate wage statements, failed to reimburse business expenses and failed to maintain records. Plaintiff alleges that this underlying conduct gives rise to a claim under Labor Code Section 2698, *et seq*. for civil penalties pursuant to Labor Code Sections 210, 225.5, 226(e), 226.3, 226.8(b), 226.8(c), 248.5, 256, 558, 1174.5, 1197.1, 2699.(a), (f), (g), for violations of California Labor Code sections 201, 202, 203, 204, 206.5, 221, 222.5, 223, 224, 226(a), 226.7, 246, 510, 512, 516, 1174(d), 1182.12, 1194, 1197, 1198, and 2802.

WHEREAS, Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Lawsuit and deny any liability or intentional wrongdoing. Defendants contend, among other things, that it has complied, at all times, with the California Labor Code. Defendants have denied and continue to deny each and every material factual allegation and alleged claim asserted against it in the Lawsuit. Defendants further contend that imposition of PAGA penalties in the amount of $100 per violation would be oppressive and confiscatory given the fact that Defendants deny any liability or wrongdoing. Defendants further deny there exists a joint employer relationship or that they may be held responsible as employers of employees of the other dealerships.

WHEREAS, on December 17, 2020, the Parties attended a mediation with mediator Scott Dickinson of ADR Services. During the Mediation and based upon the Mediator's proposal, the Parties agreed to a settlement, which was negotiated in light of all known facts and circumstances.

WHEREAS, the Parties have reached a settlement of the claims of the aggrieved employees

also referred to as PAGA Members[1] in the Settlement Agreement who are defined as: any and all current and former employees who worked for Defendants in California as non-exempt employees (including hourly paid and employees who earned commissions or other forms of incentive compensation) and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in the First Amended Complaint, at any time between one year prior to the pre-filing written notice to the Labor and Workforce Development Agency ("LWDA"), in this case on February 24, 2019, until judgment.

WHEREAS, the Parties have documented the proposed settlement of the Action in a fully-executed agreement entitled "PAGA Settlement and Release Agreement" attached hereto as **Exhibit 1**.[2]

WHEREAS, the "Covered Claims" means any and all claims that were asserted or could have been asserted for PAGA penalties based on violation of Labor Code provisions 201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2698, *et. seq.*, IWC Wage Orders, 29 U.S.C. 201, *et. seq.*, based upon the facts alleged or that could have been alleged in the February 10, 2020 PAGA Notice, the April 22, 2020 Complaint, the February 26, 2021 Amended PAGA Notice and the March 2, 2021 First Amended Complaint.

WHEREAS, upon the entry of the Order herein approving of this Settlement, each Aggrieved Employee (including Plaintiff), shall, for the period from February 24, 2019 to date of Final Judgment, fully release and forever discharge Defendants PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMTOVE, PREMIER NISSAN OF SAN JOSE, LLC,

---

[1] For consistency purposes, the aggrieved employees in this action are referred to as PAGA Members as they are in the Settlement Agreement. There are no class members in a PAGA action. There are approximately 1,104 PAGA Members subject to this Settlement.

[2] All capitalized terms herein shall have the meaning assigned to them in the fully-executed Settlement Agreement.

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMTOIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC and all of their affiliated entities, parents, subsidiaries, owners, officers, shareholders, executives and managers ("Releasees") from the Covered Claims and any other form of relief or remedy in law, equity, or whatever kind or nature that were asserted or could have been asserted pursuant to Labor Code Section 2699 for violations of § provisions 201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, and 2802, based upon the facts alleged or that could have been alleged in the February 10, 2020 PAGA Notice the April 22, 2020 Complaint, the February 26, 2021 Amended PAGA Notice, and the March 2, 2021 First Amended Complaint (the "Covered Claims").

WHEREAS, based on their own independent investigations and evaluations, Plaintiff and his counsel are of the opinion that the settlement for the consideration and on the terms set forth in the attached Settlement Agreement is fair, reasonable and adequate and is in the best interests of the Plaintiff, the PAGA Members, and the State of California in light of all known facts and circumstances and the risks inherent in litigation. Plaintiff's Counsel believes that the settlement amount entered into is in the best interests of the PAGA Members and that the settlement for each PAGA Member is fair, reasonable and adequate, given the inherent risk of litigation.

WHEREAS the Parties provided notice of the proposed settlement to the LWDA as required by PAGA. Attached hereto as **Exhibit 2** is a true and correct copy of the email confirmation showing that the Parties submitted the proposed PAGA settlement to the LWDA.

WHEREAS, prior to the submission of this Stipulation, the Parties met and conferred and agreed upon a Proposed Final Judgment that was filed concurrently with this Stipulation.

**IT IS HEREBY STIPULATED AND PROPOSED BY THE PARTIES HERETO AS**

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**FOLLOWS:**

The Parties stipulate and jointly propose that the Court approve the following terms of the fully-executed Settlement and Release, which includes the following key terms:

a) As consideration for the settlement described herein and the release contained in this Settlement, Defendants agree to make a payment of $100,000.00 in connection with the PAGA Settlement. ("Settlement Payment"). The Settlement Payment will be allocated as follows:

(a) PAGA Counsel's attorney fee request of 35% of the Settlement Payment ($35,000.00);

(b) PAGA Counsel's request for costs in the amount of $6,000.00.

(c) The remainder of the Settlement Payment after deducting items (a) and (b) herein shall be designated as PAGA Penalties, which are estimated to be $59,000.00, and will be allocated between the LWDA and the PAGA Members pursuant to Labor Code section 2699(i) with 75% paid to the LWDA ($44,250.00) and 25% paid to the PAGA Members on a pro-rata basis ($14,750.00).

b) Each PAGA Member shall receive a portion of the PAGA Penalties on a pro-rata basis using a ratio of (a) the number of Eligible Pay Periods worked by the PAGA Member during the Covered Period to (b) the total number of Eligible Pay Periods worked by all PAGA Members during the Covered Period. Each PAGA Member's pro-rata share of the PAGA Penalty Fund represents their Individual Settlement Payment. Each PAGA Member's pro-rata share of the PAGA Penalty Fund represents their Individual Settlement Payment. All Individual Settlement Payments made to PAGA Members will be reported on an IRS Form 1099.

c) As part of the request for approval of this Settlement, PAGA Counsel requests court approval of 35% of the Settlement Payment, which is $35,000.00 in attorneys' fees. PAGA Counsel will request cost reimbursement in the amount of $6,000.00for costs incurred by PAGA Counsel. These requests by PAGA Counsel are set forth in the attached declaration of Anthony J. Nunes, Esq (**Exhibit 3** hereto).

d) Should PAGA Counsel request a lesser amount for attorneys' fees and costs and/or the court approve a lesser amount, the difference shall be allocated to the PAGA Penalty Fund and distributed accordingly. Any attorneys' fees and costs awarded to PAGA Counsel, hereinafter referred to as "PAGA Counsel Fees & Costs," shall fully compensate and reimburse PAGA Counsel for any and all of the work already performed in connection with the Lawsuit and all work remaining to be performed in fully and finally resolving the Lawsuit, including but not limited to securing Court approval of the settlement, any appearing at hearings, making sure that the settlement is fairly and properly administered, defending the settlement in any appeal or other post-approval matter, all other work that PAGA Counsel has performed or will perform, and all costs that PAGA Counsel has incurred or will incur.

e) All PAGA Members including Plaintiff will release all Covered Claims against all Releasees, as set forth in the Parties' Settlement Agreement.

f) Within fifteen (15) calendar days after the Effective Date, Defendants will compile a PAGA Member list ("PAGA Member List") containing: (1) name; (2) last known home address and telephone number; (3) number of pay periods as a PAGA Member during the Covered Period; and (4) social security number.

g) Defendants will engage the services of an Administrator who shall distribute each PAGA Members Share to the PAGA Members and the attorneys' fees and costs awarded by the Court within thirty (30) calendar days of the Effective Date.

h) The payment checks for each PAGA Member Share shall be sent to each PAGA Member by U.S. First Class mail to the PAGA Member's last known address with directions to the Postmaster to forward the payment checks and return all undeliverable payment checks to Defendants. A letter approved by the Parties, in advance of Plaintiff filing the Approval Stipulation, explaining this Settlement will be included in the mailing of each PAGA Members' check. This letter is submitted concurrently to the Court for its review and approval, and is attached hereto as **Exhibit 4.**

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

i) It will be conclusively presumed that a PAGA Member's Individual Settlement Payment check was received if the payment check has not been returned within thirty (30) days of the original mailing of the payment check. The date of the initial mailing of the payment check shall be conclusively determined according to the records of the Defendants.

j) Defendants shall ensure that 75% of the PAGA Penalties is paid to the Labor and Workforce Development Agency ("LWDA").

k) Settlement checks shall remain valid and negotiable for one hundred twenty (120) calendar days from the date of their issuance. If there are uncashed checks following this period, Defendants will ensure that uncashed funds shall be forwarded to the State of California Department of Industrial Relations Unclaimed Wages Fund in the name of the PAGA Member who did not cash his or her Individual Settlement Payment check.

l) The Parties concurrently submit a proposed final judgment seeking Court approval of the Settlement Agreement and permanently barring all members of the PAGA Members from prosecuting any of the Covered Claims released in this Settlement against Defendants and the Releasees;

m) If there is a conflict between the language of this Stipulation and the language of the PAGA Settlement and Release Agreement attached hereto as **Exhibit 1**, the language of the PAGA Settlement and Release Agreement shall control.

n) In conjunction with the Approval Stipulation, the Parties concurrently submitted a proposed Final Judgment requesting the entry of judgment in the amount of $100,000.00.

DATED: March 23, 2021

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By */s/ Robert W. Thompson*

ROBERT W. THOMPSON
SARAH C. VARISCO
Attorneys for Defendants
**PREMIER AUTOMOTIVE OF BUENA PARK, L.L.C.,** a California Corporation dba PREMIER CHEVROLET OF BUENA PARK (erroneously sued as PREMIER CHEVROLET OF BUENA PARK, L.L.C., a California Corporation**);**

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP



**PREMIER AUTOMOTIVE MANAGEMENT, L.L.C.**, a Louisiana Corporation (erroneously sued as **PREMIER AUTOMOTIVE MANAGEMENT, L.L.C**., a Louisiana Corporation, dba Premier Automotive); **PREMIER NISSAN OF SAN JOSE, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE C OF CARLSBAD,** LLC, a California Limited Liability Company, **PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE IMPORTS OF CA, LLC,** a California Limited Liability Company, **PREMIER AUTOMOTIVE K OF CARLSBAD**, LLC, a California Limited Liability Company, **PREMIER AUTOMTOIVE CJDR OF BUENA PARK, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF CA, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF CLAREMONT, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF NEWARK, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF PLACENTIA, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF SEASIDE, LLC**, a California Limited Liability Company, **PREMIER AUTOMOTIVE OF STEVENS CREEK**, LLC, a California Limited Liability Company and **PREMIER AUTOMOTIVE OF WEST COVINA, LLC**, a California Limited Liability Company)

DATED: March 23, 2021

**NUNES WORKER RIGHTS LAW, APC**

By /s/ Anthony J. Nunes

ANTHONY J. NUNES
Attorneys for Plaintiff
**RONALD SILVA, on behalf of himself and all others similarly situated**

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**[PROPOSED] ORDER**

Pursuant to Stipulation by the parties and good cause appearing:

Having considered the Parties submissions, and all legal authorities and documents submitted in support thereof, including the Stipulation of Settlement and Release ("Settlement Agreement" or "Settlement"), attached hereto as **Exhibit 1**, and good cause appearing, **IT IS HEREBY ORDERED** that the Parties' request is **GRANTED**, subject to the following findings and orders:

a) All terms used herein shall have the same meaning as defined in the Settlement Agreement and Release ("Settlement Agreement") attached hereto as **Exhibit 1.**

b) The Court hereby approves the terms set forth in the Settlement Agreement and finds that the Settlement Agreement is, in all respects, fair, adequate, and reasonable and directs the Parties to effectuate the Settlement Agreement according to its terms. The Court finds that the Settlement Agreement has been reached as a result of informed and non-collusive arm's-length negotiations. The Court further finds that the Parties were able to reasonably evaluate their respective positions. The Court also finds that settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks if the Parties were to continue to litigate the case. The Court has reviewed the monetary recovery being provided as part of the Settlement and recognizes the significant value accorded to the state of California and PAGA Members.

c) The Settlement Agreement is not an admission by Defendants or by any other Released Party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendants or any other Released Party. Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendants or any of the other Released Parties.

d) Defendants shall pay the PAGA Members pursuant to the procedure described in the Settlement Agreement attached hereto as **Exhibit 1**.

e) After reviewing the proposed Settlement Agreement, the Declaration of Anthony J. Nunes in Support of Joint Stipulation for Approval of Representative PAGA Action Settlement, and this Joint Stipulation and the Exhibits attached thereto, the Court finds that the PAGA penalties awarded in this matter are fair and reasonable.

f) The Court hereby confirms Anthony J. Nunes, Esq., of Nunes Worker Rights Law, APC, as PAGA Counsel.

g) The Court hereby awards attorneys' fees in the amount of 35% of the total Settlement amount, which is $35,000.00 in attorneys' fees, and $6,000.00 in attorneys' costs. The Court finds that attorneys' work resulted in the creation of a common fund of $59,000.00and that the attorneys' fees and costs requested were reasonable in light of the amount recovered and the relevant factors under California law. The payment of fees to PAGA Counsel shall be made in accordance with the terms of the Settlement.

h) The Court finds that the parties have reasonably evaluated how the PAGA penalty payments are to be distributed. The Court approves of Defendants distributing each PAGA Members Share to the PAGA Members, in accordance with the terms of the Settlement.

i) Defendants, the other Released Parties, and Plaintiff shall have no further liability for costs, expenses, interest, attorneys' fees, or for any other charge, expense, or liability, except as provided in the Settlement Agreement.

j) The Court further orders, adjudges and decrees that each PAGA Member (including Plaintiff), shall, for the from period from February 24, 2019 to the date of Final Judgment, fully release and forever discharge to Defendants PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

PREMIER AUTOMTOVE, PREMIER NISSAN OF SAN JOSE, LLC, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMTOIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC, and all of their affiliated entities, parents, subsidiaries, owners, officers, shareholders, executives and managers ("Releasees") from the Covered Claims and any other form of relief or remedy in law, equity, or whatever kind or nature that were asserted or could have been asserted pursuant to Labor Code Section 2699 for violations of §201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, and 2802, based upon the facts alleged or that could have been alleged in the February 24, 2019 PAGA Notice, the April 22, 2020 Complaint, the February 26, 2021 Amended PAGA Notice and the March 2, 2021 First Amended Complaint.

k) The Court shall sign the (Proposed) Final Judgment signed by the Parties.

l) The Court shall have and retain continuing jurisdiction over this action and the Parties and the PAGA Members including after the entry of this Order, to the fullest extent necessary to interpret, enforce and effectuate the terms and intent of the Settlement Agreement and this Order.9p

**IT IS SO ORDERED.**

DATED: _______________

_______________________________
HON. DEAN D. PREGERSON
JUDGE OF THE DISTRICT COURT

# EXHIBIT 1

**PAGA SETTLEMENT AND RELEASE OF ALL CLAIMS AGREEMENT**

This Settlement and Release Agreement (hereinafter sometimes referred to as the "Settlement" or "Agreement") is made and entered into by RONALD SILVA (hereinafter "Plaintiff"). Individually and as a private attorney general on behalf of the State of California pursuant to Labor Code section 2698, *et. seq*., the Private Attorneys General Act ("PAGA") on the one hand, and PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMOTIVE, PREMIER NISSAN OF SAN JOSE, LLC, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMOTIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC (collectively herein "Defendants") on the other hand. Plaintiff and Defendants are collectively referred to as "the Parties" and individually as a "Party." This Agreement is intended to resolve all disputes and extinguish those obligations described below.[1]

This Settlement shall be binding on Plaintiff and the PAGA Members he represents (as defined below) and on Defendants, all of their affiliated entities, parents, subsidiaries, owners, officers, executives, directors, and managers, subject to the terms and conditions hereof and the approval of the Court.

## I. NATURE OF ACTION

1. On February 24, 2020, Plaintiff sent notice to the Labor and Workforce Development Agency ("LWDA') giving notice of his intent to pursue a representative PAGA action, on behalf of himself and the State of California as well on behalf of other aggrieved employees.

---

[1] Plaintiff has an ongoing workplace injury/disability case currently pending before California's Worker Compensation Board in Van Nuys, California, Case No. ADJ13374538. Nothing in this Agreement, including, but not limited to, the waiver under Civil Code section 1542, shall interfere with Plaintiff's ability to pursue and recover from Defendants for workers' compensation or other related workplace injury and/or disability claims. Any reference in this agreement as to "release of all claims" shall specifically exclude Plaintiff's ongoing workplace injury/disability case currently pending before California's Worker Compensation Board in Van Nuys, California as Case No. ADJ13374538.

2.   For purposes of this settlement, the PAGA members are defined as: any and all current and former employees who worked for Defendants in California as non-exempt, employees (including hourly paid and employees who earned commissions or other forms of incentive compensation) and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in the First Amended Complaint, at any time between one year prior to the pre-filing written notice to the Labor and Workforce Development Agency ("LWDA"), in this case on February 24, 2020, until judgment. There are approximately 1,104 Members subject to this Settlement.

3.   In advance of the Mediation, Defendants provided Plaintiff and PAGA counsel with information about the number of potentially aggrieved employees and the number of workweeks at issue.

4.   On December 17, 2020, the Parties attended a mediation with mediator Scott Dickinson of ADR Services. During the mediation, the Parties agreed to a settlement, which was negotiated in light of all known facts and circumstances.

## II.    REPRESENTATIONS AND DEFINITIONS

5.   "PAGA Representative" of "Plaintiff" shall refer to Named Plaintiff RONALD SILVA.

6.   "Defendants" shall mean and refer to PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMOTIVE, PREMIER NISSAN OF SAN JOSE, LLC, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMOTIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC.

7.   "Released Parties" shall mean and refer to Defendants and all of their affiliated entities, parents, subsidiaries, owners, officers, shareholders, executives and managers.

8.   "Lawsuit" refers to the civil action pending in the United States District Court for

the Central District of California, titled, *Ronald Silva, an individual on behalf of himself and all others similarly situated v. Premier Automotive of Buena Park, LLC, et. al, Defendants*, Case No. 2:20-cv-03671 DDP (MAAx).

9. "PAGA Counsel" shall refer to Anthony J. Nunes, (SBN 290224) of Nunes Worker Rights Law, APC, 15260 Ventura Blvd., Ste. 1200, Sherman Oaks, CA 91403.

10. "Counsel for Defendant(s)" and "Defense Counsel" shall refer to Robert W. Thompson (SBN 106411) of Callahan Thompson Sherman & Caudill, 2601 Main St., Ste. 800, Irvine, CA 92614.

11. "Covered Period" shall mean the period from February 24, 2019 to the date of final judgment.

12. "PAGA Member" or "PAGA Members" shall mean any and all individuals who were employed by Defendants who were any and all current and former employees who worked for Defendants in California as non-exempt employees (including hourly paid and employees who earned commissions or other forms of incentive compensation) and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in the First Amended Complaint, at any time between one year prior to the pre-filing written notice to the Labor and Workforce Development Agency ("LWDA"), in this case on February 24, 2020, until judgment.

13. "Court" refers to the United States District Court for the Central District of California.

14. "PAGA Member Share" shall mean and refer to each PAGA Members' share of the 25% of PAGA penalties allocated to the PAGA Members in accordance with Labor Code section 2699(i).

15. "Covered Claims"' means any and all claims that were asserted or could have been asserted for PAGA penalties for the Covered Period based on violations of Labor Code provisions 201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 2802, and IWC Wage Orders, based upon the facts alleged or that could have been alleged in the February 24, 2020 PAGA Notice, the April 22, 2020 Complaint, the February 26, 2021 Amended PAGA Notice and the March 2, 2021 First Amended Complaint. The Covered Claims do not include any employees' individual claims other than those claims by Plaintiff in paragraph 31 of this Settlement and Plaintiffs contingent individual settlement.

16. "Eligible Pay Periods" means the total number of pay periods that each PAGA Member received a wage statement during the Covered Period.

17. "Settlement" shall mean this PAGA Settlement and Release Agreement.

18. "Effective Date" and "Final" shall mean the date that the Court grants approval of the PAGA Settlement,

19. "Gross Settlement Amount" or "GSA" shall mean and refer to the $100,000.00 that Defendants are obligated to pay under the terms of the proposed settlement. The Gross Settlement Amount is non-reversionary, such that the entire amount will be disbursed, and none will revert to Defendants.

20. "Individual Settlement" shall mean and refer to the individual settlement between Plaintiff and Defendants for individual claims that are not at issue in this PAGA action.

21. Plaintiff alleges that Defendants failed to pay himself and other aggrieved employees minimum wage, overtime, and all wages owed at termination. Plaintiff also alleges Defendants failed to provide meal periods and paid rest breaks to himself and other aggrieved employees. Additionally, Plaintiff alleges Defendants failed to provide him and other similarly situated with accurate wage statements, failed to reimburse business expenses and failed to maintain records. Plaintiff alleges that this underlying conduct violates various provisions of the Labor Code and gives rise to a claim pursuant to Labor Code Section 2698, *et seq.*

22. The Parties exchanged meaningful information through informal discovery for the mediation including information about the number of aggrieved employees and number of work weeks at issue.

23. Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Lawsuit and deny any liability or intentional wrongdoing. Defendants contend, among other things, that they have complied at all times with the California Labor Code. Defendants further contend that imposition of PAGA penalties in the amount of $100 per violation would be oppressive and confiscatory given the fact that Defendants deny any wrongdoing of any kind. Defendants further deny there exists a joint employer relationship or that they may be held responsible as employers of employees of the other dealerships.

24. The Parties recognize that the issues presented in the Lawsuit are likely only to be resolved with extensive and costly pretrial and trial proceedings, and that further litigation will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of litigation. The Parties have taken into account the risk and uncertainty of the outcome inherent in any litigation.

25. Plaintiff and PAGA Counsel contend that they have diligently pursued an investigation of the PAGA Members' claims against Defendants.

26. Based on their own independent investigations and evaluations, Plaintiff and PAGA counsel are of the opinion that the settlement for the consideration and on the terms set forth in this Settlement is fair, reasonable, and adequate and is in the best interests of the Plaintiff, the PAGA Members and the State of California in light of all known facts and circumstances.

27. The purpose of this Settlement is to settle and compromise the Lawsuit and all Covered Claims that Plaintiff and the PAGA Members have against Defendants and the Releasees (as defined in Section IV, below). Neither the existence of this Settlement nor anything contained in this Settlement shall be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants. Nothing herein shall constitute an admission by Defendants that the Lawsuit was properly brought as a representative action other than for settlement purposes. Settlement of the Lawsuit, the negotiation and execution of this Settlement, and all acts performed or documents executed pursuant to or in furtherance of this Settlement or the settlement of the Lawsuit: (a) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of either Defendants or of the truth of any of the factual allegations in the operative Complaint in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omissions on the part of Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; (c) are not, shall not be deemed to be, and may not be used as, an admission or evidence of the appropriateness of these or similar claims for representative treatment, class certification, or administration other than for purposes of administering this Settlement; and (d) shall not constitute or be deemed a waiver of Defendants' right to compel arbitration of any dispute with a PAGA Member.

28. The Parties agree that upon full execution of this Settlement, discovery is informally stayed while the parties undertake the work necessary to attain court approval of the Settlement. In order to comply with the requirements of Labor Code Section 2699(l), the Parties shall submit a Joint Stipulation to the Court identifying the key terms of this Settlement and Release agreement and requesting that the Court approve the Settlement ("Approval Stipulation"). Defendants shall prepare the Joint Stipulation, The Settlement is contingent upon the approval by the Court. If after forty-five (45) days of the submission of the Joint Stipulation for Approval of Representative Action Settlement the Court does not approve the Stipulation and/or act upon the Parties Stipulation, Defendants will prepare and file a Joint Motion to Confirm PAGA settlement. If the Court denies a Joint Stipulation for Approval of Representative Action settlement and a Joint Motion to Approve PAGA Settlement solely due to concerns that the Parties cannot address through non-material modifications of this Agreement (except for those provisions related to PAGA Counsel's attorneys' fees and costs

request and/or the requested Service Award for Plaintiff), (i) this Settlement shall be considered null and void; (ii) neither this Settlement nor any of the related negotiations or proceedings shall be of any force or effect; and (iii) all Parties to this Settlement shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court. Invalidation of any material portion of this Settlement, except for the amount of attorneys' fees and costs, shall invalidate this Settlement in its entirety unless the Parties shall subsequently agree in writing that the remaining provisions shall remain in full force and effect.

29. In the event the Court does not approve such a Joint Stipulation and/or grant a Joint Motion to Approve PAGA Settlement, the Parties will be restored to their positions prior to the Settlement and the Settlement shall be null and void. The informal discovery stay will be lifted five (5) court days after the Court rejects a properly noticed motion to approve. Defendant will not file a Joint Motion to Approve PAGA Settlement unless the Court either denies a Joint Stipulation of Settlement and/or fails to act upon a Joint Stipulation of Settlement within forty-five (45) days after its submission.

## III.    TERMS OF SETTLEMENT

30. In consideration of the mutual covenants, promises and representations set forth in this Settlement, Plaintiff, on behalf of the State of California as a Private Attorney General and Defendants agree to settle and compromise the Lawsuit and the Covered Claims, subject to the terms and conditions set forth in this Settlement.

31. *The Amount of Settlement*: As consideration for the settlement described herein and the release contained in this Settlement, Defendants agree to pay the following Gross Settlement Amount of $100,000.00 in connection with the PAGA Settlement. The Gross Settlement Amount will be allocated as follows:

    a.  PAGA Counsel's attorney fee request of one-third of the Settlement Payment ($35,000.00);

    b.  PAGA Counsel's request for costs in the amount of $6,000.00;

    c.  The remainder of the Settlement Payment after deducting items (a) and (b) herein shall be designated as PAGA Penalties, which are estimated to be $59,000.00, and will be allocated between the LWDA and the PAGA Members pursuant to Labor Code section 2699(i) with 75% paid to the LWDA ($44,250.00) and 25% paid to the PAGA Members on a pro-rata basis ($14,750.00).

32. *Allocation and Calculation of the PAGA Penalties*: Each PAGA Member shall receive a portion of the PAGA Penalties on a pro-rata basis using a ratio of (a) the number of Eligible Pay Periods worked by the PAGA Member during the Covered Period to (b)

the total number of Eligible Pay Periods worked by all PAGA Members during the Covered Period. The anticipated total PAGA penalty fund will be approximately $59,000.00. Seventy-five percent of the PAGA Penalty Fund will be paid to the LWDA as required by Labor Code section 2699(i). The remaining 25% of the PAGA Penalty Fund will be distributed to PAGA Members on a pro-rata basis based on the formula set forth below. Each PAGA Member's pro-rata share of the PAGA Penalty Fund represents their PAGA Member share.

        a. *PAGA Member Share*: Plaintiff and the PAGA Members shall receive a pro rata share of the 25 percent of the PAGA Penalty Fund allocated to PAGA Members. Plaintiff and each PAGA Member shall receive a pro rata value equal to PAGA Members' 25% of the Penalty Fund multiplied by the ratio of (a) the number of Eligible Pay Periods worked by that Member to (b) the total number of Eligible Pay Periods worked by all Members included in the PAGA Member group. All Individual Settlement Payments made to PAGA Members will be reported on an IRS Form 1099.

33. *PAGA Counsel's Fees and Costs*: As part of the request for approval of this Settlement, PAGA Counsel will request court approval of one-third of the Settlement Payment, which is $35,000.00, in attorneys' fees. PAGA Counsel will request cost reimbursement in the amount of $6,000.00 for costs incurred by PAGA Counsel. Should PAGA Counsel request a lesser amount for attorneys' fees and costs and/or the court approves a lesser amount, the difference shall be allocated to the PAGA Penalty Fund and distributed accordingly. Any attorneys' fees and costs awarded to PAGA Counsel, hereinafter referred to as "PAGA Counsel Fees & Costs," shall fully compensate and reimburse PAGA Counsel for any and all of the work already performed in connection with the Lawsuit and all work remaining to be performed in fully and finally resolving the Lawsuit, including but not limited to securing Court approval of the settlement, appearing at any hearings, making sure that the settlement is fairly and properly administered, defending the settlement in any appeal or other post-approval matter, all other work that PAGA Counsel has performed or will perform, and all costs that PAGA Counsel has incurred or will incur.

34. *Tax Treatment of Settlement Amounts*: With regard to settlement payments to PAGA Members and Plaintiff, IRS Form 1099's will be issued. Nothing in this Settlement is intended to constitute legal advice regarding federal, state, and/or local tax obligations. Plaintiff acknowledges that he has obtained no tax advice from Defendants and that neither Defendants nor their attorneys have made any representation concerning the tax consequences, if any, of the Settlement Amount in this Agreement or any payment to be made pursuant to this Agreement. To the extent that this Settlement or any of its attachments is interpreted to contain or constitute advice regarding any state or federal tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding penalties under the Internal Revenue Code. Defendants are not responsible for any PAGA Member tax obligations regarding the allocation of the settlement payments. Payment of PAGA Counsel Fees & Costs will be

reflected in a Form 1099 to PAGA Counsel who shall assume full responsibility and liability for the payment of taxes due on such payments.

## IV. RELEASE

35. *Release By All PAGA Members*: Upon approval by the Court of this Settlement, each PAGA Member (including Plaintiff), shall, for the Covered Period, fully release and forever discharge Defendants ("Releasees") from the Covered Claims.

36. *Release by Plaintiff*: In addition to his participation in the Release By all PAGA Members and except as otherwise provided herein, upon the Effective Date of this Settlement, Plaintiff has agreed to a separate individual settlement that is intended to compensate Plaintiff for his individual claims that are not at issue in this case since the state is the real party in interest in a PAGA action. Plaintiff is providing a full release of individual claims to the extent permitted by law, other than non-releasable claims such as workers' compensation claims, as part of this individual settlement agreement. As set forth in that Agreement, PAGA Counsel is not receiving any attorneys' fees associated with Plaintiff's individual settlement. The payment set forth in the individual settlement is not contingent on the approval of the PAGA Settlement by the Court in which the Action is pending. In the event the PAGA Settlement is not finally approved by the Court, the individual settlement shall still have effect and be rendered valid.

## V. APPROVAL STIPULATION

37. The Parties recognize that in accordance with Labor Code Section 2699(l) Court approval is required in the event of a settlement of a PAGA action on a representative basis. However, as explained in *Arias v, Superior Court,* 46 Ca1.4th 969 (2009), the Parties are not obligated to follow the class action procedural rules in PAGA cases and therefore need not obtain approval of the PAGA settlement thorough a motion for preliminary or final approval. (*See also Mendoza vs. Nordstrom, Inc.,* 2 Cal. 5th 1074 (2017) ("PAGA authorizes a representative action without the need for class certification."); *Baumann v. Chase Inv, Servs. Corp.,* 747 F.3d 1117, 1123 (9th Cir. 2014) ("a PAGA suit is fundamentally different than a class action" in that PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action."); *Williams vs. Sup. Ct.,* 3 Ca1.5th 531, 546-547 (2017) ("PAGA does not make other potentially aggrieved employees parties or clients of plaintiffs counsel, does not impose on a plaintiff or counsel any express fiduciary obligations, and does not subject a plaintiff or counsel to scrutiny with respect to the ability to represent a large class."))

38. As explained in Paragraph 28, in order to comply with the requirements of Labor Code Section 2699(l), the Parties shall submit a joint stipulation to the Court identifying the key terms of this Settlement and Release agreement and requesting that the Court

approve the Settlement ("Approval Stipulation"), and, if necessary, a Joint Motion to Approve PAGA Settlement.

## VI.    ADMINISTERING THE SETTLEMENT AND PAYMENT PLAN

39. Within fifteen (15) calendar days after the Effective Date, the Defendants will compile a PAGA Member list ("PAGA Member List") containing: (1) name; (2) last known home address and telephone number; (3) number of pay periods as a PAGA Member during the Covered Period; and (4) social security number.

40. Defendants shall make the payments identified in paragraph 31 of this Agreement within thirty (30) calendar days of the Effective Date. Defendants shall retain the services of an Administrator to distribute each PAGA Members Share to the PAGA Members and the attorneys' fees and costs awarded by the Court within thirty-five (35) calendar days of approval,

41. The payment checks for each PAGA Member Share shall be sent to each PAGA Member by U.S. First Class mail to the PAGA Member's address with directions to the Postmaster to forward the payment checks and return all undeliverable payment checks to Defendants. A letter approved by the Parties, in advance of Plaintiff filing the Approval Stipulation, explaining this Settlement will be included in the mailing of each PAGA Members' check and submitted to the Court for its review and approval. It will be conclusively presumed that a PAGA Members' Individual Settlement Payment check was received if the payment check has not been returned within thirty (30) days of the original mailing of the payment check. The date of the initial mailing of the payment check shall be conclusively determined according to the records of the Defendants.

42. Defendants shall ensure that 75% of the PAGA Penalty Fund is paid to the LWDA.

43. Settlement checks shall remain valid and negotiable for one hundred twenty (120) calendar days from the date of their issuance. If there are uncashed checks following this period, Defendants will ensure that uncashed funds shall be forwarded the State of California Department of Industrial Relations Unclaimed Wages Fund in the name of the PAGA Member who did not cash his or her PAGA Member Share.

## VII.    DUTIES OF THE PARTIES PRIOR TO APPROVAL

44. Promptly upon execution of this Settlement, the Parties shall jointly apply to the Court via the Approval Stipulation for approval of the proposed Settlement, and if necessary, file a Joint Motion to Approve PAGA Settlement. The Parties shall apply to the Court for the entry of an order and final judgement approving this Settlement as required by Labor Code section 2699(1). The Approval Stipulation/Motion to Approve will request Court approval of the

following:

    a.  Approving the terms of this Settlement and Release Agreement; and

    b.  Approving the amount of PAGA Counsel Fees & Costs

## VIII.  REPRESENTATIVE CAPACITY

45. Each Party executing this Agreement in a representative capacity represents and warrants that s/he is empowered to do so.

## IX.  MUTUAL AND FULL COOPERATION

46. The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties to this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement and the terms set forth herein. As soon as practicable after execution of this Settlement, PAGA Counsel shall, with the assistance and cooperation of Defendants and its counsel, take all necessary steps to secure the approval of this Settlement from the Court

## X.  CONFIDENTIALITY

47. Other than information necessary to secure Court approval of this settlement, the Parties agree to keep confidential all matters relative to this Settlement, including the terms of the Settlement and the facts and circumstances leading up to it. If asked about the disputes between the Parties, the Parties shall provide no other statement than "the matter has been resolved" or "the matter has settled." The Parties may, however, discuss the terms of this Settlement with their spouses, attorneys, financial advisors, tax advisors, and accountants, or upon a valid court order, at which time the individual receiving information about the terms of this Settlement shall be informed that the terms of this Settlement are confidential, and the individual may not reveal or disclose to any third party the terms of the Settlement. Nothing in this Agreement shall prohibit PAGA Counsel from disclosing this Settlement in declarations concerning their qualifications to serve as Class and/or PAGA Counsel.

## XI.  NO PRIOR ASSIGNMENTS

48. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, or purported to assign, or transfer to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein. The representations, warranties, covenants, and agreements

contained in this Agreement are for the sole benefit of the Parties under this Agreement and shall
not be construed to confer any right or to avail any remedy to any other person.

## XII.   NO ADMISSION

49. Nothing contained herein nor is the consummation of this Settlement to be
construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part
of Defendants or any of the Releasees. Each of the Parties hereto has entered into this Settlement
with the intention to avoid further disputes and litigation with the attendant inconvenience and
expense. Defendants deny that they have engaged in any unlawful activity, that they have failed
to comply with the law in any material respect, or that they have any liability to anyone under the
claims asserted in the Lawsuit. This Agreement is entered into solely for the purpose of
compromising highly disputed claims. Nothing in this Agreement is intended or shall be
construed as an admission of liability or wrongdoing by Defendants.

## XIII.   NON-EVIDENTIARY USE

50. Whether or not the Effective Date occurs, neither this Agreement nor any of its
terms nor the Settlement itself shall be: (a) construed as, offered, or admitted in evidence as,
received as, or deemed to be evidence for any purpose adverse to Defendants or any other of
the Released Parties, including but not limited to, evidence of a presumption, concession,
indication, or admission by any of the Released Parties of any liability, fault, wrongdoing,
omission, concession, or damage, or (b) disclosed, referred to, or offered in evidence against
any of the Released Parties in any further proceeding in the Lawsuit, or any other civil, criminal,
or administrative action or proceeding except for the purposes of effectuating the Settlement
pursuant to this Agreement or for Defendants to establish that a PAGA Member has resolved
any of his/her claims released through this Agreement.

## XIV.   NULLIFICATION

51.   If (a) the Court should for any reason fail to approve this Settlement in the form
agreed to by the Parties (except for the amount of attorneys' fees), or (b) the Court's approval of
this Settlement is reversed, modified, or declared or rendered void, then (i) this Agreement shall
be considered null and void; (ii) neither this Agreement nor any of the related negotiations or
proceedings shall be of any force or effect; and (iii) all Parties to this Agreement shall stand in
the same position, without prejudice, as if the Agreement had been neither entered into nor filed
with the Court. Invalidation of any material portion of this Agreement, except for the amount of
attorneys' fees and costs, shall invalidate this Agreement in its entirety, unless the Parties shall
subsequently agree in writing that the remaining provisions shall remain in full force and effect.

## XV.   ATTORNEYS' FEES, COSTS AND EXPENSES

52.   Except as specifically set forth herein, each party shall bear their/ his own attorneys' fees, costs, and expenses, taxable or otherwise, incurred by him/ them arising out of the Lawsuit, and shall not seek reimbursement thereof from any other party to this Agreement.

## XVI.  CONSTRUCTION

53.   The Parties hereto agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Agreement constitutes the entire agreement between Plaintiff (on behalf of himself and all other PAGA Members) and Defendants regarding actual or potential claims asserted by Plaintiff against Releasees. Excluding the Individual Settlement Agreement between the Parties, and any Arbitration or Confidentiality Agreement executed by Plaintiff with Defendants, all of which will remain in full force and effect, this Agreement supersedes all prior agreements, written or oral, between or among the Parties regarding those claims or potential claims and the resolution of those claims. Consequently, no other agreement, statement, or promise made by one Party to another as to any matter addressed in this Agreement shall be binding or valid.

## XVII. CAPTIONS AND INTERPRETATIONS

54. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision hereof. Each term of this Settlement is contractual and not merely a recital.

## XVIII.   MODIFICATION

55. This Settlement may not be amended, changed, altered, or modified, except in writing and signed by the Parties (or their successors-in-interest) hereto. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## XIX.  MISCELLANEOUS

56. This Settlement contains the entire agreement between the Parties relating to the Settlement of the Covered Claims and Plaintiffs Released Claims, and all prior or contemporaneous agreements (except any Arbitration Agreement and the Individual Settlement Agreement), understandings, representations, and statements, whether oral or written and whether by a party or such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing. The Parties have made such investigation of the facts and the law pertaining to the matters described herein and to this Agreement as they deem necessary, and

have not relied, and do not rely, on any statement, promise, or representation of fact or law, made by any of the other parties, or any of their agents, employees, attorneys, or representatives, with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Agreement, or with respect to any such matters that would alter or change the terms of this Agreement. No representations, warranties, or inducements have been made to any party concerning this Agreement other than those expressly set forth or referred to herein.

57. This Settlement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs. trustees, executors, administrators, successors, and assigns.

58. This Settlement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties. The counterparts may be transmitted electronically (PDF) or by facsimile.

59. This Agreement shall be governed, construed, and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of California, irrespective of the State of California's choice of law principles.

60. The Parties have cooperated in the negotiation and preparation of this Agreement. This Agreement shall not be construed against any Party on the basis that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Agreement.

61. The United States District Court for the Central District of California shall retain jurisdiction to enforce this Agreement pursuant to California Code of Civil Procedure section 664.6. The Court shall retain continuing jurisdiction over this Lawsuit and over all Parties and PAGA Members, to the fullest extent to enforce and effectuate the terms and intent of this Agreement.

62. This Agreement shall not be subject to collateral attack by any PAGA Member. Such prohibited collateral attack shall include, but not be limited to, claims that the PAGA Member failed, for any reason, to timely receive his or her Individual Settlement Payment.

**THE PARTIES HAVE READ THE FOREGOING AGREEMENT. THEY HAVE CONSULTED WITH LEGAL COUNSEL REGARDING THE FOREGOING AGREEMENT AND KNOW THE CONTENTS THEREOF AND SIGN THE SAME AS THEIR FREE, KNOWING, AND VOLUNTARY ACT AND DEED. BEING FULLY AWARE OF ITS CONSEQUENCES AND ITS FINAL AND BINDING EFFECT.**

Dated: 3/7/2021

/s/ Ronald Silva

Ronald Silva

Dated: 3/12/2021

*/s/ RJR*

Premier Automotive of Buena Park, LLC dba Premier Chevrolet of Buena Park

Dated: 3/12/2021

*/s/ RJR*

Premier Automotive Management, LLC dba Premier Automotive

Dated: 3/12/2021

*/s/ RJR*

Premier Nissan of San Jose, LLC

Dated: 3/12/2021

*/s/ RJR*

Premier Automotive C of Carlsbad, LLC

Dated: 3/12/2021

*/s/ RJR*

Premier Automotive HCDJ of California, LLC

Dated: 3/12/2021

*/s/ RJR*

Premier Automotive Imports of CA, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive K of Carlsbad, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive CJDR of Buena Park, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of CA, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of Claremont, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of Newark, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of Oakland PAH, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of Placentia, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of Seaside, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of Stevens Creek, LLC

Dated: 3/12/2021 *_/s/ RJR_*

Premier Automotive of West Covina, LLC

# EXHIBIT 2



-----Original Message-----
From: FormAssembly <no-reply@formassembly.com> On Behalf Of DIR PAGA Unit
Sent: Wednesday, March 24, 2021 11:15 AM
To: Sarah C. Varisco <svarisco@ctsclaw.com>
Subject: Thank you for your Proposed Settlement Submission

03/24/2021 11:14:48 AM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement
If you have questions or concerns regarding this submission or your case, please send an email to
pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

# EXHIBIT 3

Anthony J. Nunes, Esq. (SBN 290224)
**NUNES WORKER RIGHTS LAW, APC**
15260 Ventura Blvd., Ste. 1200
Sherman Oaks, CA 91403
Tel: (530) 848-1515
Fax: (424) 252-4301
Email: tony@nunesworkerrightslaw.com

Attorneys for Plaintiff**, RONALD SILVA, on behalf of himself and all others similarly situated**

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD SILVA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PREMIER CHEVROLET OF BUENA PARK, LLC, a California corporation, PREMIER AUTOMOTIVE MANAGEMENT, LLC, a Louisiana Corporation, dba Premier Automotive, and DOES 1-10,<br><br>Defendants. | Case No.: 2:20-cv-03671 DDP (MAAx)<br><br>JUDGE: Hon. Dean D. Pregerson<br>COURTROOM: 9C<br>COMPLAINT DATE: April 23, 2020<br><br>**DECLARATION OF ANTHONY J. NUNES IN SUPPORT OF JOINT STIPULATION REQUESTING APPROVAL OF REPRESENTATIVE PAGA SETTLEMENT** |

I, ANTHONY J. NUNES, declare:

1. I am an attorney licensed to practice law in the State of California and before this Court. I am the founder and managing shareholder at Nunes Worker Rights Law, APC, attorneys for Plaintiff Ronald Silva, on behalf of himself and all others similarly situated ("Plaintiff"). The facts set forth herein are personally known to me and, unless otherwise stated, are based on my firsthand knowledge and/or observation. If called as a witness, I could and would competently testify thereto under oath.

2. This declaration is submitted in support of the Parties' Joint Stipulation Requesting Approval of Representative PAGA Settlement.

3. Plaintiff entered into a settlement with Defendants PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMTOVE, PREMIER NISSAN OF SAN JOSE, LLC, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMTOIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC (collectively herein "Defendants") (Plaintiff and Defendants are collectively herein, the "Parties") pursuant to the PAGA Settlement and Release Agreement ("Settlement and Release"). Plaintiff respectfully seeks an Order: (1) awarding Plaintiff's Counsel PAGA attorneys' fees in the amount of $35,000.00; and (2) awarding Plaintiff's Counsel PAGA litigation costs in the amount of $6,000.00, as set forth in the Settlement and Release.

4. On February 24, 2020, Plaintiff and three additional former technicians for Defendants filed a PAGA notice with the Labor and Workforce Development Agency ("LWDA").

5. On April 22, 2020, Plaintiff filed his Class Action Complaint. Additionally, Plaintiff's Counsel filed individual actions before JAMS arbitration service on behalf of the three other former employees named in the PAGA notice.

6. On March 2, 2021, Plaintiff filed his First Amended Complaint, asserting the following causes of action: (1) Failure to Pay Minimum Wage; 2) Failure to Provide Meal Periods; 3) Failure to Provide Paid Rest Breaks; 4) Failure to Pay All Wages at Termination; 5) Failure to Provide Accurate Wage Statements; 6) Unfair Business Practices; 7) Violation of Labor Code Section 2699 (PAGA); 8) Civil Penalties for Violations of California Labor Code sections 2698, et. seq. (PAGA) 9) Collective Action-Violation of the Fair Labor Standards Act (FLSA) 29 U.S.C. 201, et. seq.

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

7. Plaintiff's Eighth Cause of Action for PAGA is asserted by Plaintiff on behalf of himself and all other current and former employees who worked for Defendants in California as non-exempt, hourly paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in the First Amended Complaint, at any time between one year prior to the pre-filing written notice to the Labor and Workforce Development Agency ("LWDA"), in this case on February 24, 2020, until judgment.

8. The PAGA Members participating in the settlement are defined as "all current and former employees who worked for Defendants in California as non-exempt, hourly paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in the First Amended Complaint, at any time between one year prior to the pre-filing written notice to the Labor and Workforce Development Agency ("LWDA"), in this case on February 24, 2020, until judgment." According to Defendants, there are approximately 1,104 PAGA Members.

9. Under the terms of the Settlement and Release, Defendants are required pay a Gross Settlement Amount of $100,000.00 to settle the PAGA claim. The Parties entered into a separate Settlement Agreement and Release of All Claims, wherein Plaintiff waived all of his individual claims in exchange for receiving $10,000 and mutual releases from Defendants.

10. The $100,000.00 Gross Settlement Amount is divided and allocated as follows (See Settlement and Release ¶26):

a. Nunes Worker Rights Law, APC's PAGA attorneys' fees are in an amount of $35,000.00 (which is 35% of the Gross Settlement Amount).

b. Nunes Worker Rights Law, APC's PAGA costs in the amount of $6,000.00 to compensate Plaintiff's Counsel for out-of- pocket costs and expenses actually incurred in connection with the PAGA Action.

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

c. The LWDA receives 75% of the PAGA Net Settlement Amount of $59,000.00, which is $44,250.00;

d. The PAGA Settlement Members receive 25% of the PAGA Net Settlement Amount of $59,000.00, which is $14,750.00.

e. All Administration Expenses will be paid by Defendants and will NOT be deducted from the Gross Settlement Amount.

11. The PAGA Settlement Members will receive a pro-rata share of the Net Settlement Amount based on the number of pay periods worked during the Covered Period. (Settlement and Release ¶27.)

12. In exchange, the PAGA Settlement Members will be subject to a very narrow release of claims: "any and all claims that were asserted or could have been asserted for PAGA penalties based on violation of Labor Code provisions 201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 520, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 2802 based upon the facts alleged or that could have been alleged in the February 24, 2020 PAGA Notice, the April 22, 2020 Complaint, the February 26, 2021 Amended PAGA Notice and the March 2, 2021 First Amended Complaint."

13. The Settlement Agreement provides that Plaintiff may seek attorneys' fees of $35,000.00 to compensate Plaintiff's Counsel for the work performed in prosecuting the PAGA claim. The Settlement Agreement further provides that Plaintiff may seek costs incurred in this action, up to $6,000.00. Accordingly, Plaintiff requests the Court to approve this sum and award Plaintiff's Counsel $35,000.00 in attorneys' fees and $6,000.00 in costs.

14. California courts generally recognize two methods of calculating attorneys' fees in civil representative actions: (1) the percentage of recovery, or percentage-of-the-fund method; and (2) the lodestar method. *Wershba v. Apple Computer* (2001) 91 Cal.App.4th 224, 254. Whether analyzed under the percentage-of-the-fund method or the lodestar method, the main inquiry is to determine whether the end result is fair and reasonable. *Powers v. Eichen* (9th Cir. 2000) 229 F.3d 1249, 1258.

15. As set forth below, the request for an award of attorneys' fees in the amount

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

CTSC law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

of $35,000.00, or 35% of the gross PAGA settlement is modest, fair and reasonable under both the percentage-of-the-fund method and the lodestar method. Additionally, because the $6,000.00 in costs incurred by Nunes Worker Rights Law, APC were directly related to his efforts to prosecute the PAGA claim, and the total amount sought is fair and reasonable.

16. Pursuant to Labor Code section 2699(g)(1), an employee who prevails in an PAGA action is entitled to an award of reasonable attorney's fees and costs. Moreover, trial courts have equitable power to award attorneys' fees and costs when litigation proceeding in a representative capacity secures a substantial benefit for the plaintiffs. *Serrano v. Priest* (1977) 20 Cal.3d 25, 38 *("Serrano III"); Glendora Cmty. Redev. Agency v. Demeter* (1984) 155 Cal.App.3d 465, 474.

17. From the onset, this case involved complex issues of law and fact, and presented significant risks. In addition to the general risks associated with litigation, there were significant risks associated with the PAGA claim, including but not limited to the state of the law regarding the parties' legal positions as well and serious factual disputes.

18. The Parties' initial arms-length settlement negotiations, formal and informal discovery and investigation resulted in agreeing to mediate the case before mediator Scott Dickinson on December 17, 2020. As a result of the mediation with Mr. Dickinson, the Parties agreed to settle the Action. During the settlement process, the Parties considered the evidence, discussed the risks of benefits of continued litigation and proceeding with litigation and/or trial. The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial at all times. Defendants maintained their position that their policies and practices were compliant with California law. Although the Parties were willing to explore the potential for a settlement, each side was also committed and prepared to litigate through trial and appeal if a settlement had not been reached. The proposed Settlement was reached at the end of a process that was neither fraudulent nor collusive. To the contrary, counsel for the Parties advanced their respective positions throughout the settlement negotiations. The Settlement that was reached with the assistance of Mr. Dickinson takes into account the strengths and weaknesses of each side's case. Each side has extensive experiencing litigating employment class and other representative actions

and agrees the Settlement Agreement is fair, balanced, and reasonable. Thereafter, the Parties engaged in further significant negotiations, which lead to the Parties executing the Settlement and Release.

19. I have conducted a thorough investigation into the applicable facts and have diligently pursued an investigation of the asserted claims against Defendants. Following the filing of the Complaint, and the issuance of written discovery by Plaintiff, the Parties agreed to discuss the potential for informally resolving this matter. Thereafter, the Parties agreed to an exchange of informal discovery, and exchanged data including the number of PAGA Group Members and applicable workweeks. I reviewed Defendant's relevant policies and practices, Plaintiff's personnel file, and practices pertaining to the PAGA Group members' employment with Defendant, as well as other evidence and documents concerning Defendant's defenses and denials.

20. I have conducted a thorough investigation into the facts of the Action and have diligently pursued an investigation of the PAGA Cause of Action against Defendant. Based on my own independent investigation and evaluation, I am of the opinion that the PAGA Settlement with Defendants is fair, reasonable, and adequate and is in the best interests of the public, PAGA Group Members and the LWDA in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues. The Parties further recognize that the issues presented in the Action are likely only to be resolved with extensive and costly pretrial proceedings and that further litigation will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of further litigation and have taken into account the risk and uncertainty of the outcome inherent in any further litigation.

21. Further, Plaintiff and I recognize there are serious risks concerning the PAGA claim based on unpaid wages owed. Defendants maintain that there is no violation because employees were not permitted to work off the clock. As a result, according to Defendants, there would be serious disputed issues of fact that potentially could require an individualized fact-based inquiry, making any trial of this PAGA action unmanageable and inappropriate.

22. Based on the above, this PAGA action posed serious risks for Plaintiff and

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

me, and the legal and factual issues concerning the applicable law of Labor Code sections 201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 520, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, and 2802 to the disputed facts were complex and complicated. The fact that we were able to achieve the results we did, despite the substantial risks we faced, demonstrates significant skill and determination.

23. I have borne the entire risk and cost of litigation, all on a pure contingency basis. Throughout the litigation, I prepared and litigated this matter, advancing costs and deferring all payment of fees, with no guarantee that any of the fees incurred or costs advanced would ever be recovered. This also entailed me declining other fee generating work, as this case occupied resources that could have been devoted to other matters.

24. I believe I am qualified to act as PAGA counsel in this matter and that my hourly rate of $395 for representative wage-and-hour matters is fair and reasonable. I have been a practicing attorney since 2013 and have focused most of my career in the area of employment law, including wage-and-hour litigation. I believe my hourly rate is commensurate with the prevailing market rates in the greater Los Angeles areas for attorneys of comparable experience and skill in handling complex matters.

25. I graduated in 2003 from the University of California-Davis, receiving a Bachelor of Arts degree in Economics and Political Science. In 2012, I graduated from the University of Minnesota Law School and received my Juris Doctor.

26. I was admitted to practice law in the State of California in 2013. I further am admitted to practice law before the United States District Court for the Northern, Central, and Eastern Districts of California, and the Ninth Circuit Court of Appeals.

27. In 2014, I founded Nunes Law Group, APC. At Nunes Law Group, my attorney brother and I handled a variety of litigation matters, including wage-and-hour and employment law lawsuits.

28. Nunes Law Group, APC has specialized in recovering wages for automotive technicians. After the *Gonzalez* ruling in 2013, auto technicians that had previously been compensated on a piece-rate, flat-rate or flag basis, became entitled to be paid for all hours worked.

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36. 38. As a result of *Gonzalez*, Nunes Law Group began specializing in representing piece-rate auto technicians who are sometimes unaware of their legal rights. *Id.*

29. Between 2014 to 2017, my firm filed approximately 30+ wage-and-hour class action against auto dealerships in state and federal court on behalf of automotive technicians. We also handled dozens of auto technician cases in arbitration.

30. In approximately 2017, I opened up a new practice, Nunes Worker Rights Law, APC. Nunes Worker Rights Law exclusively practices employment law with a focus on representing blue collar workers in wage-and-hour litigation.

31. At Nunes Worker Rights Law, APC, I have been lead counsel on a number of putative wage-and-hour class actions. In the California wage-and-hour case of *Sanchez et al. v. J.A. Moss, Inc., dba Moss Brothers*, Riverside County Superior Court Case No. RIC1600480, the Court issued an Order and Judgment Approving Class and PAGA Settlement on December 18, 2019, holding that Nunes Worker Rights Law, APC was well qualified to act as Class Counsel in that case, and appointed Nunes Worker Rights Law, APC as Class and PAGA Counsel as a result.

32. My office is fully committed to dedicating the time and resources to see this case through its conclusion. As a result, I had to forego and turn down additional work in order to devote the necessary time to vigorously prosecute this Action.

33. My firm vigorously prosecuted this class action lawsuit, which was defended ably and aggressively by defense counsel. We anticipate another approximately 25-40+ hours of attorney time to be expended in obtaining final approval of the Settlement Agreement (including responding to inquiries from Class Members and overseeing the administration process), but these anticipated hours are not including in the billable hours listed below.

34. I believe that in light of hours worked and risks associated with this litigation, the attorneys' fees and costs requested is appropriate and should be preliminarily approved as fair and reasonable.

35. Here, my request for attorneys' fees of 35% of the total gross PAGA settlement amount is well within the range deemed reasonable in similar representative cases. The

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

award sought is also more than justified because I achieved a fair settlement for the PAGA members and the LWDA that will result in a fair monetary recovery, which likely would not have been possible without the risks undertaken by my firm in litigating this matter.

36. Class Counsel contends—and Defendant does not oppose—that the attorneys' fees and costs requested is appropriate and should be preliminarily approved as fair and reasonable. Furthermore, while Class Counsel does not request fees under the "lodestar" approach, California courts, in exercising their broad discretion to determine the appropriate fee pursuant to a fee-shifting statute, may base their calculations on the lodestar method. *See PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000); *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1997) ("Serrano III'). Under this method, the Court computes the "lodestar" amount by multiplying the number of hours reasonably expended by each attorney or legal staff member by their reasonable hourly rates. *Serrano III*, 20 Cal. 3d at p. 48.

37. I request a fee award of $35,000. To date, I have expended a total of 136.0 hours on this matter at an hourly rate of $395 per hour, incurring fees in the amount of $53,720. This results in a lodestar multiplier of 0.65, which is an effective hourly rate of $257, and is below my regular hourly rates for representative actions and below the market rates for similarly qualified counsel. My time billed on this case includes time spent investigating and researching the case, drafting the PAGA letter, drafting the complaint, drafting written discovery, quantitative statistical analysis of payroll records, drafting and responding to correspondence, communicating with Plaintiff, preparing for the mediation, mediating and negotiating the settlement. This does not include time spent by support staff, nor does it include time that will be spent ensuring that the settlement funds are distributed according to the parties' agreement and the Court's order.

38. The hours I spent litigating this matter are not only reasonable, but were entirely necessary for the successful prosecution of this case and for the recovery obtained on the PAGA claim. I have litigated this matter with great efficiency in light of the amount of work required to achieve the settlement.

39. In prosecuting this Action, we incurred and seek $6,000 in costs, including $4,000 for Plaintiff's share of the mediator's fee. Each expense was reasonably and necessarily

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

incurred in my efforts to prosecute the PAGA Action effectively. Further, all of the expenses incurred are undoubtedly the type that would normally be billed to and paid for by the client.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Dated this 23rd day of March 2021 in Los Angeles, California.

*/s/ Anthony J. Nunes*

ANTHONY J. NUNES

CTSC law CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

- 10 -

DECLARATION OF ANTHONY J. NUNES IN SUPPORT OF JOINT STIPULATION REQUESTING APPROVAL OF REPRESENTATIVE PAGA SETTLEMENT

# EXHIBIT 4

[LETTERHEAD]

Mailing Date

**NOTICE OF SETTLEMENT**

*Re: RONALD SILVA, an individual, on behalf himself and all similarly aggrieved current and former employees and the State of California, Plaintiff v. PREMIER AUTOMOTIVE OF BUENA PARK, LLC dba PREMIER CHEVROLET OF BUENA PARK and PREMIER AUTOMOTIVE MANAGEMENT, LLC dba PREMIER AUTOMTOVE, PREMIER NISSAN OF SAN JOSE, LLC, PREMIER AUTOMOTIVE C OF CARLSBAD, LLC, PREMIER AUTOMOTIVE HCDJ OF CALIFORNIA, LLC, PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, PREMIER AUTOMOTIVE K OF CARLSBAD, LLC, PREMIER AUTOMTOIVE CDJR OF BUENA PARK, LLC, PREMIER AUTOMOTIVE OF CA, LLC, PREMIER AUTOMOTIVE OF CLAREMONT, LLC, PREMIER AUTOMOTIVE OF NEWARK, LLC, PREMIER AUTOMOTIVE OF OAKLAND PAH, LLC, PREMIER AUTOMOTIVE OF PLACENTIA, LLC, PREMIER AUTOMOTIVE OF SEASIDE, LLC, PREMIER AUTOMOTIVE OF STEVENS CREEK, LLC, PREMIER AUTOMOTIVE OF WEST COVINA, LLC, Defendants, United States District Court for the Central District of California, Case No. 2:20-cv-03671 DDP (MAAx) filed on April 23, 2020*

A settlement has been reached in the above-referenced lawsuit.

On __________________, 2021, the United States District Court for the Central District of California issued an Order approving the settlement of claims brought pursuant to the Private Attorneys General Act of 2004 ("PAGA"). Pursuant to the Settlement, $59,000.00 shall be paid as PAGA penalties pursuant to Labor Code section 2699(i) with 75% of the PAGA Penalties being paid to the California Labor and Workforce Development Agency ($44,250.00), as required under PAGA, and 25% ($14,750.00) paid to the Aggrieved Employees on a pro-rata basis based upon the number of pay periods he/she worked for Defendants from February 24, 2019 to the date of Final Judgment.

By way of this Settlement, the dealerships have been released from any and all claims that were asserted or could have been asserted pursuant to Labor Code Section 2698 *et seq*. for violations of Labor Code Sections 201-204, 206.5, 221, 222.5, 223, 224, 226, 226.7, 246, 510, 512, 516, 520, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 2802 from February 24, 2019 to the date of Final Judgment. This includes, but is not limited to, claims that the dealerships failed to pay minimum wages, provide meal periods and paid rest breaks, pay all wages owed at termination, and failure to provide accurate wage statements. Defendants deny any liability or wrongdoing and contend, among other things, that they have complied at all times with the California Labor Code, all other state and federal wage laws, and further contend that the Lawsuit is without merit.

You are receiving money under the Settlement because you are or were an employee of a Defendant dealership and worked one or more pay periods from February 24, 2019 to the date of Final Judgment. Your settlement amount is $__________. Your enclosed check is valid for one hundred and twenty (120) days from the date of its issuance. After that date, you cannot cash the check and it will be null and void. Funds attributable to such uncashed checks will be sent to the Department of Industrial Relations Unclaimed Wage Fund in your name.

Sincerely,

______________________________

DEALER NAME HERE